UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by UPK D.C.
MAR 02 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

12-CV-20863-LENARD/O'SULLIVAN
12-CV-_____

Jonathan Corbett,
                    Plaintiff

v.

Transportation Security Administration,
United States of America,
Alejandro Chamizo,
Broward County
                    Defendants

COMPLAINT FOR VIOLATIONS OF THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND RELATED CLAIMS

JURY DEMANDED

## SUMMARY

1. Plaintiff Jonathan Corbett ("CORBETT") presented himself at an airport security checkpoint, where the Transportation Security Administration ("TSA") informed him that he must submit to a manual "pat-down" of his genitals and buttocks as a condition of flying.

2. CORBETT informed the TSA that he would not consent to such a search, and that if such a search were required to board his flight, he would instead vacate the checkpoint.

3. The TSA, especially through its employee Alejandro Chamizo ("CHAMIZO") prohibited CORBETT from leaving and illegally detained CORBETT for a period of approximately one hour, threatened him with (false) arrest and forcible search, non-consensually photocopied documents in CORBETT's possession, and subjected CORBETT's belongings to a search that was retaliatory and beyond the scope of a lawful warrantless search permitted by the administrative search doctrine.

4. This intentional abuse of authority blatantly violated CORBETT's clearly established rights, as well as the TSA's own policies, causing significant emotional damages.

5. After the incident, CORBETT filed Freedom of Information Act Requests with the TSA as well as the operator of the airport, Defendant Broward County ("BROWARD") (via its Aviation Department). Instead of providing CORBETT with documents, including and especially video evidence of the encounter, the TSA and BROWARD conspired to obstruct justice by lying to CORBETT about their existence, and have produced no documents as of the date of filing this complaint.

- 1 -

## JURY TRIAL

6. CORBETT demands a jury trial.

## STATEMENT OF NO RELATION TO OTHER CASES

7. In the interest of clarity, CORBETT commenced an action in 2010 that challenged TSA screening procedures relating to the adoption of new, invasive search procedures. *Corbett v. United States*, 10-CV-24106(Cooke/Turnoff) (S.D.F.L, 2010), 11-12426 (11th Cir. 2011), *petition to U.S. Supreme Court pending*. The instant case is <u>not</u> related to, or a continuation of, the 2010 case because this complaint does not challenge TSA procedures[1], but instead complains that the TSA failed to follow its own procedures and exceeded its lawful authority.

## PARTIES

8. CORBETT is an individual residing in Miami-Dade County, Florida.

9. Defendant TSA is a sub-agency of the United States Department of Homeland Security.

10. Defendant United States of America ("USA") is this great nation.

11. Defendant Alejandro Chamizo, upon information and belief, is, and was at all times relevant to the complaint, a Transportation Security Manager or similarly senior employee of the TSA. CHAMIZO is named in his individual capacity. Upon belief, CHAMIZO is a resident of Broward County, Florida.

12. Defendant Broward County is a government entity incorporated under the laws of the State of Florida.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction under 5 U.S.C. § 552a (the "Privacy Act"). This jurisdiction extends to <u>all Privacy Act claims against TSA</u>.

---

[1] The TSA's current standard operating procedures ("SOP") are contained in a document that is not publicly disclosed and therefore is unavailable to CORBETT. However, CORBETT assumes that this document neither prescribes nor condones false arrests, retaliatory searches, *etc.*

14. This Court has subject matter jurisdiction under 28 USC § 1346 ("Federal Tort Claims Act," "FTCA")[2]. This jurisdiction extends to <u>all state-law-based claims against USA</u>.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, on the basis of there being a federal question. See *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971). This jurisdiction extends to all <u>constitutional claims against CHAMIZO</u>.

16. This Court has subject matter jurisdiction under 42 USC § 1983 (the "Civil Rights Act"). This jurisdiction extends to <u>the Civil Rights Act claim against CHAMIZO</u>.

17. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) (the "Freedom of Information Act," "FOIA"). This jurisdiction extends to <u>the FOIA claim against the TSA</u>.

18. This Court has supplemental jurisdiction to enforce Fla. Stat. 119 *et. seq.* This jurisdiction extends to <u>the Florida Public Records Act claim against BROWARD</u>.

19. This Court has supplemental jurisdiction to enforce the common law as interpreted by the State of Florida. This jurisdiction extends to <u>the civil conspiracy claim against defendant BROWARD</u>.

20. This Court has supplemental jurisdiction to enforce Article I, Section 12 of the Constitution of the State of Florida. This jurisdiction extends to the <u>Florida constitutional claim against defendant BROWARD</u>.

21. Venue is appropriate because the incidents that gave rise to this action occurred within this District, because an agency of the United States of America is a named defendant, because the TSA operates within this district, because Broward County is located within this district, and because the remaining defendant, CHAMIZO, resides within this District.

---

[2] CORBETT timely filed an administrative claim with the TSA on or about August 29th, 2011, which the TSA "deemed presented" on September 2nd, 2011. The time allowed for the government to respond has expired with neither a settlement nor denial of the claim.

## ALLEGATIONS OF FACT

22. On or about August 27th, 2011, CORBETT arrived at Fort Lauderdale-Hollywood International Airport (FLL).

23. FLL airport is operated by BROWARD.

24. All events described in paragraphs 25 – 72 of this complaint took place on the above date at the above location.

25. CORBETT's intention was to board a commercial airline flight.

26. CORBETT presented himself at a TSA security checkpoint.

27. CORBETT was required by the TSA to submit to screening at the security checkpoint as a condition of flying.

28. When CORBETT approached the front of the checkpoint, he was directed to a "nude body scanner."

29. A "nude body scanner" is a device that produces an image of a person without his or her clothes using x-rays, millimeter waves, or similar electromagnetic emissions, and has been referred to by the TSA as "Whole Body Imaging," "WBI," "Advanced Imaging Technology," and "AIT."

30. CORBETT "opted out" of the nude body scanner.

31. An "opt out" is a TSA procedure for electing not to participate in the nude body scanner program.

32. The TSA, by its own public policy, allows all passengers to "opt out" of the nude body scanner program as-of-right.

33. After CORBETT opted out, he was informed that the TSA would be screening him instead via a "pat-down" search.

34. CORBETT consented to the "pat-down" search under the condition that the screener not touch his genitals or buttocks.

35. The TSA screener informed CORBETT that his consent condition was a "problem" and summoned a supervisor.

36. The supervisor was advised of the situation, and confirmed to CORBETT that he must consent to having his genitals[3] and buttocks touched, or else the police would be called.

37. CORBETT re-iterated that he would not permit the manual touching of his genitals or buttocks.

38. The supervisor summoned a Broward county sheriff (the "SHERIFF").

39. The Broward Sheriff's Office is operated by BROWARD.

40. The supervisor summoned CHAMIZO.

41. As CHAMIZO was not uniformed, CORBETT inquired of one of the uniformed TSA employees as to whether CHAMIZO was a Transportation Security Manager[4].

42. The uniformed TSA employee responded to CORBETT that CHAMIZO was a Transportation Security Manager.

43. CHAMIZO again confirmed to CORBETT that he must consent to having his genitals and buttocks touched.

44. CHAMIZO stated to CORBETT that if he did not consent, he would be forcibly searched.

45. CHAMIZO stated to CORBETT that if he did not consent, he would be arrested.

46. CHAMIZO stated to CORBETT that he was not free to leave the checkpoint.

47. CORBETT understood at this point that he was being detained.

48. A reasonable person at this point would have understood that he or she was being detained.

---

[3] The TSA, as what appears to be public relations policy, never uses the term "genitals," but instead uses euphemisms, creepy as they may be, such as, "We will rub our hand up the inside of your leg until we meet 'resistance.'" A basic anatomy lesson confirms that if, using your hand, you traverse upwards along the inside of a human's leg until there is no more room to travel, your hand will be on the person's genitals.

[4] A Transportation Security Manager ("TSM") is the first level of "management" of the TSA. Wearing suits instead of uniforms and typically performing no screening functions (instead, only supervisory functions), a TSM is the highest level TSA employee that is required (by TSA rule) to be present in the airport before any security checkpoint can operate.

49. Simultaneous to CORBETT's conversations described above, two TSA employees were inspecting CORBETT's belongings.

50. CORBETT's belongings consisted of an average-sized backpack plus a small plastic bag of books.

51. The search of CORBETT's belongings extended more than 30 minutes.

52. Upon experience, a typical TSA hand search of a backpack takes less than a minute.

53. The search of CORBETT's belongings was the most extensive search of anyone's belongings that CORBETT has ever witnessed anywhere, including at TSA checkpoints during the hundreds of times he has traversed them.

54. During the search, one of the screeners began to look through a small stack of credit cards, IDs, and other plastic cards that belonged to CORBETT.

55. CORBETT verbally objected to the screener's review of his credit cards, explicitly stating that such a search was outside of the TSA's mission of finding weapons, explosives, and incendiary devices ("WEI").

56. The screener informed CORBETT that he was just "making sure the names matched."

57. "Making sure the names match" does not further the TSA's mission of finding WEI.

58. During the search, one of the screeners began to look through the pages of one of CORBETT's books.

59. The screener did so in a manner that was not to determine if WEI were somehow hidden within the book, but rather to inspect the text of the book

60. CORBETT verbally objected to the screener's review of his book, explicitly stating that such a search was outside of the TSA's mission of finding WEI.

61. The screener told CORBETT that he could look through CORBETT's book if he wanted to.

62. The screener's intention, as shown by the duration of the search, the "name-matching" of credit cards, and the inspection of items beyond what was necessary to find WEI, was intended to find contraband that was not related to aviation security.

12. Injunctive relief for FOIA & Public Records Act claims against Defendants TSA and BROWARD requiring the production of all documents requested by CORBETT.

13. Cost of the action.

14. Reasonable attorney's fees, should CORBETT retain an attorney[11].

15. Any other such relief as the court deems appropriate.

Dated: Miami, Florida

March 2nd, 2012

Respectfully submitted,

Jonathan Corbett

Plaintiff, *Pro Se*

100 Lincoln Road, #726

Miami Beach, FL 33139

E-mail: jcorbett@fourtentech.com

---

[11] CORBETT is presently representing himself in this action *pro se*, and is not seeking attorney's fees for any *pro se* work. CORBETT only seeks attorney's fees in the event that he retains an attorney at a later point, and only for the work completed by said attorney.