UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Jonathan Corbett,<br>　　　　　　　　　Plaintiff<br><br>　　　　v.<br><br>Transportation Security Administration,<br>United States of America,<br>Alejandro Chamizo,<br>Broward County<br>Broward Sheriff's Office<br>　　　　　　　　　Defendants | 12-CV-20863(Lenard/O'Sullivan)<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND RELATED CLAIMS**<br><br>**JURY DEMANDED** |

## SUMMARY

1. Plaintiff Jonathan Corbett ("CORBETT") presented himself at an airport security checkpoint, where the Transportation Security Administration ("TSA") informed him that he must submit to a manual "pat-down" of his genitals and buttocks as a condition of flying.

2. CORBETT informed the TSA that he would not consent to such a search, and that if such a search were required to board his flight, he would instead vacate the checkpoint.

3. The TSA, especially through its employee Alejandro Chamizo ("CHAMIZO") prohibited CORBETT from leaving and illegally detained CORBETT for a period of approximately one hour, threatened him with (false) arrest and forcible search, non-consensually photocopied documents in CORBETT's possession, and subjected CORBETT's belongings to a search that was retaliatory and beyond the scope of a lawful warrantless search permitted by the administrative search doctrine.

4. This intentional abuse of authority blatantly violated CORBETT's clearly established rights, as well as the TSA's own policies, causing significant emotional damages.

5. After the incident, CORBETT filed Freedom of Information Act Requests with the TSA as well as the operator of the airport, Defendant Broward County ("BROWARD") (via its Aviation Department). Instead of providing CORBETT with documents, including and especially video evidence of the encounter, the TSA and BROWARD conspired to obstruct justice by lying to CORBETT about their existence, and have produced no documents as of the date of filing this complaint.

- 1 -

## JURY TRIAL

6. CORBETT demands a jury trial.

## STATEMENT OF NO RELATION TO OTHER CASES

7. In the interest of clarity, CORBETT commenced an action in 2010 that challenged TSA screening procedures relating to the adoption of new, invasive search procedures. *Corbett v. United States*, 10-CV-24106(Cooke/Turnoff) (S.D.F.L, 2010), 11-12426 (11th Cir. 2011), *petition to U.S. Supreme Court pending*. The instant case is not related to, or a continuation of, the 2010 case because this complaint does not challenge TSA procedures[1], but instead complains that the TSA failed to follow its own procedures and exceeded its lawful authority.

## PARTIES

8. CORBETT is an individual residing in Miami-Dade County, Florida.

9. Defendant TSA is a sub-agency of the United States Department of Homeland Security.

10. Defendant United States of America ("USA") is this great nation.

11. Defendant Alejandro Chamizo, upon information and belief, is, and was at all times relevant to the complaint, a Transportation Security Manager or similarly senior employee of the TSA. CHAMIZO is named in his individual capacity. Upon belief, CHAMIZO is a resident of Broward County, Florida.

12. Defendant Broward County is a government entity incorporated under the laws of the State of Florida.

13. Defendant Broward Sheriff's Office ("BSO") is a government entity incorporated under the laws of the State of Florida.

---

[1] The TSA's current standard operating procedures ("SOP") are contained in a document that is not publicly disclosed and therefore is unavailable to CORBETT. However, CORBETT assumes that this document neither prescribes nor condones false arrests, retaliatory searches, *etc*.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction under 5 U.S.C. § 552a (the "Privacy Act"). This jurisdiction extends to <u>all Privacy Act claims against TSA</u>.

15. This Court has subject matter jurisdiction under 28 USC § 1346 ("Federal Tort Claims Act," "FTCA")[2]. This jurisdiction extends to <u>all state-law-based claims against USA</u>.

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, on the basis of there being a federal question. See *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388 (1971). This jurisdiction extends to all <u>constitutional claims against CHAMIZO</u>.

17. This Court has subject matter jurisdiction under 42 USC § 1983 (the "Civil Rights Act"). This jurisdiction extends to <u>the Civil Rights Act claim against CHAMIZO</u>.

18. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) (the "Freedom of Information Act," "FOIA"). This jurisdiction extends to <u>the FOIA claim against the TSA</u>.

19. This Court has supplemental jurisdiction to enforce Fla. Stat. 119 *et. seq.* This jurisdiction extends to <u>the Florida Public Records Act claim against BROWARD</u>.

20. This Court has supplemental jurisdiction to enforce the common law as interpreted by the State of Florida. This jurisdiction extends to <u>the civil conspiracy claim against defendant BROWARD</u>.

21. This Court has supplemental jurisdiction to enforce Article I, Section 12 of the Constitution of the State of Florida. This jurisdiction extends to the <u>Florida constitutional claim against BSO</u>.

22. Venue is appropriate because the incidents that gave rise to this action occurred within this District, because an agency of the United States of America is a named defendant, because the TSA operates within this district, because Broward County is located within this district, and because the remaining defendant, CHAMIZO, resides within this District.

---

[2] CORBETT timely filed an administrative claim with the TSA on or about August 29th, 2011, which the TSA "deemed presented" on September 2nd, 2011. The time allowed for the government to respond has expired with neither a settlement nor denial of the claim.

## **ALLEGATIONS OF FACT**

23. On or about August 27th, 2011, CORBETT arrived at Fort Lauderdale-Hollywood International Airport (FLL).

24. FLL airport is operated by BROWARD.

25. All events described in paragraphs 25 – 72 of this complaint took place on the above date at the above location.

26. CORBETT's intention was to board a commercial airline flight.

27. CORBETT presented himself at a TSA security checkpoint.

28. CORBETT was required by the TSA to submit to screening at the security checkpoint as a condition of flying.

29. When CORBETT approached the front of the checkpoint, he was directed to a "nude body scanner."

30. A "nude body scanner" is a device that produces an image of a person without his or her clothes using x-rays, millimeter waves, or similar electromagnetic emissions, and has been referred to by the TSA as "Whole Body Imaging," "WBI," "Advanced Imaging Technology," and "AIT."

31. CORBETT "opted out" of the nude body scanner.

32. An "opt out" is a TSA procedure for electing not to participate in the nude body scanner program.

33. The TSA, by its own public policy, allows all passengers to "opt out" of the nude body scanner program as-of-right.

34. After CORBETT opted out, he was informed that the TSA would be screening him instead via a "pat-down" search.

35. CORBETT consented to the "pat-down" search under the condition that the screener not touch his genitals or buttocks.

36. The TSA screener informed CORBETT that his consent condition was a "problem" and summoned a supervisor.

37. The supervisor was advised of the situation, and confirmed to CORBETT that he must consent to having his genitals[3] and buttocks touched, or else the police would be called.

38. CORBETT re-iterated that he would not permit the manual touching of his genitals or buttocks.

39. The supervisor summoned a Broward county sheriff (the "SHERIFF").

40. The Broward Sheriff's Office is operated by BROWARD.

41. The supervisor summoned CHAMIZO.

42. As CHAMIZO was not uniformed, CORBETT inquired of one of the uniformed TSA employees as to whether CHAMIZO was a Transportation Security Manager[4].

43. The uniformed TSA employee responded to CORBETT that CHAMIZO was a Transportation Security Manager.

44. CHAMIZO again confirmed to CORBETT that he must consent to having his genitals and buttocks touched.

45. CHAMIZO stated to CORBETT that if he did not consent, he would be forcibly searched.

46. CHAMIZO stated to CORBETT that if he did not consent, he would be arrested.

47. CHAMIZO stated to CORBETT that he was not free to leave the checkpoint.

48. CORBETT understood at this point that he was being detained.

49. A reasonable person at this point would have understood that he or she was being detained.

---

[3] The TSA, as what appears to be public relations policy, never uses the term "genitals," but instead uses euphemisms, creepy as they may be, such as, "We will rub our hand up the inside of your leg until we meet 'resistance.'" A basic anatomy lesson confirms that if, using your hand, you traverse upwards along the inside of a human's leg until there is no more room to travel, your hand will be on the person's genitals.

[4] A Transportation Security Manager ("TSM") is the first level of "management" of the TSA. Wearing suits instead of uniforms and typically performing no screening functions (instead, only supervisory functions), a TSM is the highest level TSA employee that is required (by TSA rule) to be present in the airport before any security checkpoint can operate.

50. Simultaneous to CORBETT's conversations described above, two TSA employees were inspecting CORBETT's belongings.

51. CORBETT's belongings consisted of an average-sized backpack plus a small plastic bag of books.

52. The search of CORBETT's belongings extended more than 30 minutes.

53. Upon experience, a typical TSA hand search of a backpack takes less than a minute.

54. The search of CORBETT's belongings was the most extensive search of anyone's belongings that CORBETT has ever witnessed anywhere, including at TSA checkpoints during the hundreds of times he has traversed them.

55. During the search, one of the screeners began to look through a small stack of credit cards, IDs, and other plastic cards that belonged to CORBETT.

56. CORBETT verbally objected to the screener's review of his credit cards, explicitly stating that such a search was outside of the TSA's mission of finding weapons, explosives, and incendiary devices ("WEI").

57. The screener informed CORBETT that he was just "making sure the names matched."

58. "Making sure the names match" does not further the TSA's mission of finding WEI.

59. During the search, one of the screeners began to look through the pages of one of CORBETT's books.

60. The screener did so in a manner that was not to determine if WEI were somehow hidden within the book, but rather to inspect the text of the book

61. CORBETT verbally objected to the screener's review of his book, explicitly stating that such a search was outside of the TSA's mission of finding WEI.

62. The screener told CORBETT that he could look through CORBETT's book if he wanted to.

63. The screener's intention, as shown by the duration of the search, the "name-matching" of credit cards, and the inspection of items beyond what was necessary to find WEI, was intended to find contraband that was not related to aviation security.

64. The screener's intention, as shown by the duration of the search, the "name-matching" of credit cards, and the inspection of items beyond what was necessary to find WEI was retaliatory for refusing to consent to genital inspection.

65. CHAMIZO was the "officer"-in-charge on the scene and approved of the searches.

66. During this process, CORBETT's Florida driver's license and boarding pass were taken by CHAMIZO to be photocopied.

67. CORBETT did not consent to have his documents photocopied.

68. CORBETT was not presented with any variety of form, information packet, OMB control number, or receipt describing the information that would be collected, its purpose, its retention, or CORBETT's duty to furnish it.

69. Upon belief, no information regarding this collection of data was ever published in the Federal Register, and no system for the maintenance of this data exists.

70. Also during this process, the TSA handed CORBETT's Florida driver's license, or a copy thereof, to the BSO.

71. CORBETT did not consent to the transfer of his documents to the BSO.

72. The BSO proceeded to run a warrant check on CORBETT, again without his consent.

73. CORBETT was then ejected from the security checkpoint and denied access to his gate.

74. On August 29th, 2011, CORBETT filed a FOIA request and demand to preserve evidence upon both the TSA (under federal FOIA law) and BROWARD (under Florida's Public Records Act).

75. This request included a request for video from the security checkpoint.

76. The TSA has failed to formally respond to CORBETT's FOIA request, beyond assigning it an identification number, despite CORBETT's repeated reminders via phone and e-mail.

77. The only information the TSA provided to CORBETT was via phone on January 23rd, 2012, which was that the TSA was not in possession of any video evidence because they do not operate any of the cameras at the security checkpoints at FLL.

78. BROWARD responded on September 23rd, 2011, providing only the identification of the SHERIFF, and stating that video evidence did not exist.

79. CORBETT, confused about both the TSA and BROWARD denying that they have video evidence, again contacted BROWARD to ask who owned the cameras.

80. BROWARD responded that there was no video that existed for the request, but added a note that "even if they did exist, we have been informed by the TSA that this… would have constituted Sensitive Security Information[5]."

81. CORBETT again contacted BROWARD asking them to explicitly confirm or deny that they own the cameras at the security checkpoint.

82. BROWARD confirmed that they own the cameras at the security checkpoint.

83. CORBETT again contacted BROWARD, asking how there could possibly be no video in their possession if they own the cameras.

84. BROWARD replied that "any CCTV video tape, and any information relating thereto, was not disclosable."

85. Upon belief, "was not disclosable" means that BROWARD intentionally lied to CORBETT about the existence of video in their September 23rd, 2011 response to him.

86. TSA security checkpoint videos are regularly released, under FOIA requests and otherwise.

87. TSA security checkpoint videos are not SSI or otherwise exempted from mandatory disclosure, as the contents of the checkpoint videos is a recording of public events that could be seen and legally recorded by anyone who would choose to stand near the checkpoint and record them.

88. The security videos also cannot be SSI because SSI is a designation internal to the TSA, and the videos were made by a third party (BROWARD).

89. As a result of the above, CORBETT now experiences significant emotional distress on a regular basis, including but not limited to anxiety dealing with public officials, anxiety with airports, fear of unlawful arrest and retribution, and nightmares.

---

[5] Sensitive Security Information ("SSI") is an administrative category used by the TSA to restrict documents meeting certain conditions from public disclosure. *See* 49 CFR §§ 15, 1520.

## CLAIMS FOR RELIEF

### Count 1: The Fourth Amendment to the United States Constitution
### Unreasonable Seizure
### Defendant CHAMIZO in his individual capacity

90. At the point where CORBETT was told that he could not leave[6], CORBETT's person was seized by CHAMIZO.

91. CHAMIZO had neither probable cause, reasonable suspicion, nor even an articulable reason for detaining CORBETT[7].

92. CHAMIZO further had no legal authority to seize CORBETT, even if probable cause did exist[8].

93. This seizure violated CORBETT's fourth amendment right to be free from unreasonable seizure.

### Count 2: The Fourth Amendment to the United States Constitution
### Unreasonable Search (Credit Cards)
### Defendant CHAMIZO in his individual capacity

94. Absent warrant, probable cause, or consent[9], the government is entitled to conduct only an administrative search at airport checkpoints, and this search is limited to the scope of aviation safety – the detection of WEI.

95. CHAMIZO was directly responsible for the employee who inspected CORBETT's credit cards.

96. CHAMIZO oversaw and approved of the search being done by the employee who inspected CORBETT's credit cards.

---

[6] The seizure occurred at the moment a reasonable person would have understood that he or she is not free to go. Arguably, this may have happened before defendant CHAMIZO explicitly stated that CORBETT could not leave, but this point is moot.

[7] Any "reason" for detaining CORBETT could only be predicated on CORBETT's exercise of his right to refuse consent to a search. However, the exercise of a right cannot legally justify suspicion in and of itself.

[8] Transportation Security Managers are not law enforcement officers, and are not vested with the power to arrest.

[9] Any consent implied by CORBETT's presence at the checkpoint cannot be construed to exceed the minimum consent required to pass through the checkpoint.

97. This search was not reasonably necessary to determine whether or not CORBETT was in possession of WEIs.

98. This non-consensual, warrantless, causeless search violated CORBETT's fourth amendment right to be free from unreasonable search.

### Count 3: The Fourth Amendment to the United States Constitution
### Unreasonable Search (Book)
### Defendant CHAMIZO in his individual capacity

99. Absent warrant, probable cause, or consent, the government is entitled to conduct only an administrative search at airport checkpoints, and this search is limited to the scope of aviation safety – the detection of WEI.

100. CHAMIZO was directly responsible for the employee who inspected CORBETT's book.

101. CHAMIZO oversaw and approved of the search being done by the employee who inspected CORBETT's book.

102. This search was not reasonably necessary to determine whether or not CORBETT was in possession of WEIs.

103. This non-consensual, warrantless, causeless search violated CORBETT's fourth amendment right to be free from unreasonable search.

### Count 4: The Fourth Amendment to the United States Constitution
### Unreasonable Search (Retaliatory)
### Defendant CHAMIZO in his individual capacity

104. Absent consent, the government is entitled to conduct a search only in furtherance of a legitimate government interest.

105. CHAMIZO was directly responsible for the employee who inspected CORBETT's belongings.

106. CHAMIZO oversaw and approved of the search being done by the employee who inspected CORBETT's belongings.

107. This search was not reasonably necessary to determine whether or not CORBETT was in possession of WEIs.
108. Instead, as shown by the duration and intensity, this search was intended to be retaliatory and did not further any legitimate government interest.

109. This non-consensual, warrantless, causeless search violated CORBETT's fourth amendment right to be free from unreasonable search.

## Count 5: Violation of the Civil Rights Act, 42 USC § 1983
### Defendant CHAMIZO in his individual capacity

110. Defendant CHAMIZO, an employee of a federal security agency who claimed the power to detain CORBETT, acted under color of law.

111. CHAMIZO's actions deprived CORBETT of his freedom, in violation of his Constitutional, federal, and state rights.

## Count 6: Civil Assault
### Defendant USA

112. CHAMZO informed CORBETT that if he did not consent, he would be forcibly searched.

113. CORBETT understood CHAMIZO's intended search to include the manual touching of his genitals and buttocks.

114. This threat caused apprehension in CORBETT that harmful and offensive conduct was imminent.

115. This threat was intentional – intended to cause said apprehension in order to coerce CORBETT into consent.

## Count 7: False Arrest
### Defendant USA

116. Defendant USA, through its employee, under color of law informed CORBETT that he was not free to leave the security checkpoint.

117. The employee who detained CORBETT was not a law enforcement officer and was not authorized to place CORBETT under arrest.

118. Even had the employee had powers of arrest, no probable cause existed to detain CORBETT.

119. CORBETT was at no point charged with a crime, nor has anyone ever articulated to CORBETT what crime he may have committed that justified this arrest.

### Count 8: Invasion of Privacy – False Light
### Defendant USA

120. Defendant USA, through its employees, publicly detained CORBETT for a period of approximately one hour.

121. This detention happened at the checkpoint in plain sight of no less than hundreds of passengers.

122. Defendant USA surrounded CORBETT with uniforms, including at one point no less than 5 TSA employees, in addition to police officers and the un-uniformed CHAMIZO.

123. Defendant dumped CORBETT's belongings out on a table during this process for the unlawfully extended period discussed in this complaint, during which it was searched by two individuals.

124. It is extraordinarily unusual to see an individual surrounded by uniforms in an airport with his belongings strewn about and being meticulously pawed over.

125. A reasonable person would have assumed CORBETT was a criminal.

126. Defendant USA's actions, through its employees, are intentional – intended to make one as uncomfortable as possible to promote compliance, despite it being one's right to refuse compliance with many of the requests that came at CORBETT.

### Count 9: Intentional Infliction of Emotional Distress
### Defendant USA

127. Defendant USA, through its employees, subjected CORBETT to invasive, demeaning, unnecessary, and unlawful searches.

128. Defendant USA, through its employees, also subjected CORBETT to unlawful seizure.

129. CORBETT experienced, and continues to experience, serious emotional distress as a result of this incident.

130. Defendant USA's actions, through its employees, were intentional.

### Counts 10-16: Violations of 5 U.S.C. § 552a
### Failure to Meet Agency Requirements
### Defendant TSA

131. Defendant TSA, through its employee, collected personal information from CORBETT, including photocopies of his driver's license and boarding pass.

132. 5 U.S.C. § 552a(e) prescribes many requirements for federal agencies that collect personal information from individuals.

133. Based on the facts described above, the TSA failed to meet all of the following subsection requirements of 5 U.S.C. § 552a(e): 3, 4, 5, 9, 10, 11, 12.

134. Each of these subsections is individually charged as a violation of 5 U.S.C. § 552a(e).

### Count 17: Freedom of Information Act, 5 U.S.C. § 552 *et. seq*.
### Defendant TSA

135. The TSA was properly served a Freedom of Information Act request.

136. The time frame established by law for the TSA to respond has expired by many months.

137. The TSA has failed to respond.

### Count 18: Public Records Act, Fla. Stat. 119 *et. seq*.
### Defendant BROWARD

138. BROWARD was properly served a Public Records Act request.

139. BROWARD's response knowingly contained false statements; to wit, that records did not exist when they did.

140. BROWARD refused to correct the false statements and provide the records.

141. The records are not exempt from disclosure.

142. Any reliance on TSA statements that the records constituted SSI was improper in light of the fact that security footage is regularly released and that the video was not created by the TSA.

### Counts 19 and 20: Civil Conspiracy
**Defendants USA (Count 19) and BROWARD (Count 20)**

143. The TSA and BROWARD conferred with each other regarding BROWARD's response to CORBETT's Public Records Act request.

144. As a result of this collusion, BROWARD intentionally lied to CORBETT regarding the existence of responsive records.

145. The above effect was the intention of both parties.

### Count 21: Florida Constitution, Article I, Section 12
**Defendant BSO**

146. Defendant BSO took CORBETT's identification from the TSA without CORBETT's consent.

147. CORBETT is not required to provide his identification to law enforcement absent reasonable suspicion.  *Hiibel v. Nevada*, 542 U.S. 177 (2004).

148. BSO was aware when it obtained CORBETT's identification from the TSA that CORBETT did not provide it to the TSA for that purpose.

149. BSO could have asked CORBETT's consent, but chose not to.

150. BSO lacked not only reasonable suspicion, but also an articulable reason for interacting with CORBETT[10].

151. The non-consensual identification card seizure and subsequent warrant check therefore violated CORBETT's rights under Article I, Section 12 of the Florida constitution.

---

[10] Any "reason" for interacting with CORBETT could only be predicated on CORBETT's exercise of his right to refuse consent to a search.  However, the exercise of a right cannot legally justify suspicion in and of itself; therefore, as soon as it was determined that the sole reason that the TSA requested the BSO was lawful refusal of a search, the interaction should have ceased.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for the following relief:

1. Declaratory relief stating that the actions complained of by CORBETT in each individual count are illegal (all defendants).

2. Actual damages for all FTCA claims against Defendant USA in the total amount of US$500,000.00.

3. Compensatory damages for all Fourth Amendment violations against Defendant CHAMIZO in the total amount of US$500,000.00.

4. Punitive damages for all Fourth Amendment violations against Defendant CHAMIZO in the total amount of US$500,000.00.

5. Punitive damages for the Civil Rights Act violation against Defendant CHAMIZO in the amount of US$500,000.00.

6. Statutory damages pursuant to 5 USC § 552a(g)(4)(a) against Defendant TSA in the amount of US$1,000.00 per Privacy Act violation (total: US$7,000.00).

7. Injunctive relief requiring compliance with 5 USC § 552a *et. seq.* against Defendant TSA, including but not limited to requiring the return or destruction of records illegally obtained or maintained.

8. Nominal damages for the civil conspiracy against Defendant USA in the amount of US$1.00.

9. Punitive damages for the civil conspiracy against Defendant BROWARD in the amount of US$500,000.00.

10. Compensatory damages for the Florida Constitutional claim against Defendant BSO in the amount of US$500,000.00.

11. Punitive damages for the Florida Constitutional claim against Defendant BSO in the amount of US$500,000.00.

12. Injunctive relief for FOIA & Public Records Act claims against Defendants TSA and BROWARD requiring the production of all documents requested by CORBETT.

13. Cost of the action.

14. Reasonable attorney's fees, should CORBETT retain an attorney[11].

15. Any other such relief as the Court deems appropriate.

Dated: Miami, Florida

    May 8th, 2012

Respectfully submitted,

_____

Jonathan Corbett

Plaintiff, *Pro Se*

100 Lincoln Road, #726

Miami Beach, FL 33139

E-mail: jcorbett@fourtentech.com

---

[11] CORBETT is presently representing himself in this action *pro se*, and is not seeking attorney's fees for any *pro se* work.  CORBETT only seeks attorney's fees in the event that he retains an attorney at a later point, and only for the work completed by said attorney.