UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-20863-CV-LENARD/O'SULLIVAN

**JONATHAN CORBETT,**

    Plaintiff,

v.

**TRANSPORTATION SECURITY
ADMINISTRATION, et al.,**

    Defendants.
_____/

## OMNIBUS ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (D.E. 89, 93) AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (D.E. 95)

**THIS CAUSE** is before the Court on Defendant Transportation Security Administration's Motion for Summary Judgment (D.E. 89, 2/13/13), Defendant Broward County's Motion for Summary Judgment (D.E. 93, 2/29/13), and Plaintiff Jonathan Corbett's Opposition to Defendants' Motions for Summary Judgment and Cross-Motion for Summary Judgment (D.E. 95, 2/27/13). Having considered the referenced filings, related pleadings, and record, the Court finds as follows.

### I.  Background

On August 27, 2011, Plaintiff arrived at Fort Lauderdale-Hollywood International Airport (FLL) in Broward County to board a commercial airline flight. Plaintiff proceeded to a Transportation Security Administration (TSA) checkpoint, where he was required to submit to a preflight security screening. Plaintiff declined to go through an

electronic full-body scanner, and he refused to submit to a manual pat-down search. TSA officers detained Plaintiff and searched his belongings. Plaintiff was then removed from the security checkpoint and denied access to his departure gate.

By letters dated August 28, 2011, Plaintiff requested from the TSA and the Broward County Aviation Department, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 522, and Florida's Public Records Act (FPRA), Fla. Stat. § 119, any records pertaining to the security incident. (See Letter to TSA, D.E. 89-4 at 3; Letter to Broward, D.E. 93-2 at 3.) Plaintiff requested specifically:

1. Any notes taken by any employees of your organizations relating to this incident
2. Any incident reports, e-mails, or other documentation created as a result of this incident
3. Any correspondence between your organization and any other party as a result of this incident
4. <u>Any audio, video, and or photographic records</u> taken on August 27th between 3:45 AM and 5:15 AM at or around the TSA checkpoint in front of the FLL "E gates" (US Airways). This must include all camera views that contain any part of this checkpoint, as well as the camera that monitors the sterile area's exit (adjacent to the checkpoint).

(Letter to TSA, D.E. 89-4 at 3; Letter to Broward, D.E. 93-2 at 3.)

After receiving Plaintiff's records request, the TSA initiated a search for responsive documents. (Piniero Decl., D.E. 89-2 ¶ 11.) The TSA sent a request to FLL personnel, who collected any incident reports or other records generated in connection with the security incident. (Id.) FLL returned twenty-nine pages of records. (Id.) TSA also conducted an internal search of electronic records and found three pages of email related to the incident. (Id. ¶ 13.) At some point the TSA also obtained video surveillance footage from the security checkpoint. (See id. ¶ 29.)

2

Some of the foregoing records appeared to contain sensitive security information (SSI), so those records were submitted to the TSA's SSI Branch for review. (Id. ¶ 12; Hoffman Decl., D.E. 89-3 ¶ 8.) The SSI Branch determined that several documents contained SSI. (See Hoffman Decl., D.E. 89-3 ¶¶ 9–14.) In particular, certain reports revealed the selection criteria for enhanced passenger-screening and described the enhanced screening procedures used by the TSA. (Id.) The SSI Branch determined that if that information were made public, it would "provid[e] insight to those interested in circumventing TSA's checkpoint screening procedures." (Id. ¶ 11.) The TSA therefore redacted or withheld that information, invoking FOIA Exemption 3. (See id. ¶¶ 9–14.)

In addition, numerous records contained the names of TSA employees or state law enforcement officers that were involved in the security incident. (See Piniero Decl., D.E. 89-2 ¶¶ 28, 32.) The surveillance video footage also showed the faces of certain TSA employees. (Id. ¶ 29.) The TSA determined that those individuals had a privacy interest in their personal identifying information because "its disclosure could expose them to unnecessary unofficial questioning, harassment, and stigmatization." (Id. ¶ 26; accord id. ¶ 32.) The TSA also determined that "none of the individuals' personal information would shed light on how TSA performs its statutory duties generally or in the particular instance at issue." (Id. ¶ 27.) The TSA concluded that "the public interest in having that information disclosed was insufficient to merit disclosure." (Id. ¶ 28.) The TSA therefore redacted the names of TSA employees and police officers from the paper records and pixelated their faces on the surveillance footage, invoking FOIA Exemption

6. (See id. ¶¶ 24–29.) The TSA also invoked Exemption 7(C) as an alternate basis on which to redact the names of the responding law enforcement officers. (Id. ¶¶ 30–33.)

  Meanwhile, after receiving Plaintiff's records request, Broward sought direction from the TSA on whether the requested surveillance footage could be disclosed. (Capello Aff., D.E. 93-3 ¶ 7.) Broward consulted with the TSA pursuant to an Other Transaction Agreement (OTA) executed by the Department of Homeland Security (DHS), the TSA, and Broward under the authority of the Aviation and Transportation Security Act, Pub. L. 107-71, 115 Stat. 597. (See id. ¶ 5; OTA, D.E. 93-4 at 3.) The OTA sets forth the terms and conditions under which Broward operates closed circuit television (CCTV) surveillance cameras at FLL. (OTA, D.E. 93-4 at 3.) The OTA provides, in relevant part, that "[a]ny and all requests for CCTV media received by [Broward] shall be reviewed for Sensitive Security Information (SSI) in accordance with 49 C.F.R. § 1542.101(c) and 49 C.F.R. § 1520.9(a)(3). If [Broward] is unable to determine whether the requested media contains SSI, then [Broward] shall forward the request to TSA Field Counsel for Sensitive Security Information (SSI) review in accordance with 49 C.F.R. § 1542.101(c) and 49 C.F.R. § 1520.9(a)(3)." (Id. at 3.) Broward sought review by the TSA. (Capello Aff., D.E. 93-3 ¶ 8.) At the time that Broward consulted with the TSA, the TSA's position was that the footage requested by Plaintiff contained non-disclosable SSI and that the existence of any footage itself constituted SSI as well. (Id. ¶¶ 8, 9.) On this basis, Broward informed Plaintiff that the requested video footage did not exist, and even if it did, it would not have been disclosable. (Cooper Decl., D.E. 96-1 ¶ 7.)

4

The TSA later issued a response to Plaintiff's records request by letter dated June 25, 2012. (See TSA FOIA Response, D.E. 89-5 at 1.) The TSA stated that it had conducted a reasonable search and had located thirty-two pages of records responsive to Plaintiff's request. (Id.) The TSA disclosed twenty-nine of the pages, subject to redactions, and it withheld three pages in full. (See id. at 1–2.) The TSA cited the FOIA Exemptions under which information was being withheld or redacted. (See id.) On July 23, 2012, TSA issued an amended FOIA response and furnished a pixelated copy of the requested surveillance footage. (See Amended FOIA Response, D.E. 89-7 at 2–3.) Plaintiff pursued an administrative appeal of the TSA's nondisclosures, which was ultimately denied. (See FOIA Appeal, D.E. 89-6 at 1; Denial of Appeal, D.E. 89-8 at 1.)

Plaintiff filed the present pro se action against TSA, Broward, and other parties alleging various civil-rights violations, state torts, and Privacy-Act violations arising from the security detention and search. (See First Amended Complaint, D.E. 20 at 9–14.) Plaintiff further alleges that the TSA violated FOIA by failing to properly respond to his records request and that Broward violated the FPRA by failing to provide the records requested and by falsely stating that records did not exist. (See id. at 13–14.) Plaintiff seeks "[i]njunctive relief for FOIA & Public Records Act claims against Defendants TSA and BROWARD requiring the production of all documents requested." (Id. at 15.)

Defendants earlier moved to dismiss Plaintiff's First Amended Complaint in its entirety. In an Omnibus Order, this Court dismissed Plaintiff's purported constitutional, tort, and Privacy-Act claims as non-actionable. (See Order, D.E. 69 at 8–32.)

## II. Motions for Summary Judgment

Plaintiff, the TSA, and Broward now move for summary judgment with respect to Plaintiff's remaining FOIA and FPRA claims. (See Motions, D.E. 89, 93, 95.)

Plaintiff first argues, with regard to the records that have been disclosed, that the TSA improperly redacted the names and faces of TSA employees pursuant to FOIA Exemption 6. (See Cross-Motion, D.E. 95 at 3–10.) Plaintiff claims that the requested records are not subject to that exemption; that TSA employees have no privacy interest protecting disclosure of their identities; and that there is a strong public interest in releasing unredacted footage of the security interaction. (Id.) Plaintiff states his intention to "publish [the unredacted] video for the world to see." (Id. at 10.) Plaintiff also argues that the TSA improperly redacted the names of responding law enforcement officers pursuant to FOIA Exemption 7(C). (Id.) Plaintiff claims that the requested files are not subject to that exemption and that police officers have no privacy interest protecting disclosure of their names. (Id. at 10–11.) In addition, Plaintiff requests that the Court review the substance of the TSA's SSI redactions. (Id. at 14.) Plaintiff argues that the SSI designations are "highly suspect" and that this Court has jurisdiction to review them. (Id.) Plaintiff further claims that the TSA and Broward have failed to produce alleged interagency communications responsive to his request for "[a]ny correspondence between your organization and any other party as a result of [the security] incident." (Id. at 15.) Finally, Plaintiff maintains that Broward violated Florida's Public Records Act by falsely denying the existence of the surveillance footage sought. (Id. at 11–13.)

The TSA argues that it properly redacted the names and faces of TSA employees and state law enforcement officers pursuant to FOIA Exemption 6. (See TSA Motion, D.E. 89 at 10.) The TSA argues that the employees and officers have a privacy interest in their identifying information and that there is no public interest in disclosure that outweighs that privacy interest. (Id. at 12–15.) The TSA also argues that it properly redacted the names of the police officers pursuant to FOIA Exemption 7(C), as the requested records are subject to that exemption and the officers have a privacy interest in the protection of their identities. (Id. at 16; TSA Response, D.E. 98 at 6.) The TSA argues that this Court has no jurisdiction to review the substance of its SSI designations, and even if the Court did, the SSI designations were appropriate. (TSA Motion, D.E. 89 at 5–10.) The TSA further argues that its FOIA search was reasonable and adequate, and Plaintiff's speculation that additional disclosable records exist does not rebut the presumption of reasonableness. (Id. at 4; TSA Response, D.E. 98 at 8–9.) In support of its Motion for Summary Judgment, the TSA has submitted the above-cited declarations of Aeron J. Piniero, Operations Manager for the TSA's FIOA Office, and David E. Hoffman, Chief of the TSA's SSI Program. (See Piniero Decl., D.E. 89-2 ¶ 1; Hoffman Decl., D.E. 89-3 ¶ 1.)

Broward argues that Plaintiff is unable to sustain a claim under Florida's Public Records Act because the TSA has exclusive authority to control the release of SSI, and Broward acted at the direction of the TSA in denying Plaintiff's request for surveillance footage. (See Broward Motion, D.E. 93 at 7–9.) Broward argues alternatively that Plaintiff's FPRA claim is now moot, as the TSA has released the requested footage

subject to appropriate redactions.  (Id. at 9.)  In support of its Motion for Summary Judgment, Broward has submitted the above-cited declaration of Frank Capello, Aviation Security Director of the Broward County Aviation Department, and Sharlene Cooper, Public Records Request Coordinator for the Broward County Aviation Department.  (See Capello Decl., D.E. 93-3 ¶ 2; Cooper Decl., D.E. 96-1 ¶ 3.)

### III.   Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  FOIA claims generally should be resolved on summary judgment.  Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008).

In FOIA actions, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements."  Bonilla v. U.S. Dep't of Justice, 798 F. Supp. 2d 1325, 1329 (S.D. Fla. 2011) (internal quotation marks omitted).  The Government may use affidavits or declarations to meet its burden, Miccosukee Tribe, 516 F.3d at 1258, and such documents are "accorded a presumption of good faith," Fla. Immigrant Advocacy Ctr. v. Nat'l Sec. Agency, 380 F. Supp. 2d 1332, 1343 (S.D. Fla. 2005).

### IV.   Discussion

FOIA requires federal agencies, upon any request for records that reasonably describe documents held by that agency, to make those documents promptly available to any person.  5 U.S.C. § 552(a)(3).  FOIA was enacted "to encourage public disclosure of

8

information so citizens may understand what their government is doing." Office of the Capital Collateral Counsel, N. Region of Fla. v. U.S. Dep't of Justice, 331 F.3d 799, 802 (11th Cir. 2003). A district court has jurisdiction over a complaint brought under FOIA "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

FOIA mandates disclosure of records upon request unless the records fall within any of nine exemptions set forth at 5 U.S.C. § 552(b). Fla. House of Representatives v. U.S. Dep't of Commerce, 961 F.2d 941, 944 (11th Cir. 1992). The three FOIA exemptions at issue in this case protect the following materials from disclosure:

> (3) [matters] specifically exempted from disclosure by statute . . . , if that statute--
> > (A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> > (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . . .
> > \* \* \* \* \*
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
> > \* \* \* \* \*
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

5 U.S.C. § 552(b).

### a. Exemption 3

The first issue is whether the TSA properly redacted sensitive security information (SSI) pursuant to FOIA Exemption 3 and whether the TSA's SSI redactions are reviewable by this Court.

Exemption 3 protects from disclosure any information "specifically exempted from disclosure by statute," provided that the statute (i) requires the matters be withheld from the public in such a manner as to leave no discretion or (ii) establishes specific criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3)(A); News-Press v. U.S. Dep't of Homeland Sec., 489 F.3d 1173, 1189 n.3 (11th Cir. 2007).

One such withholding statute, 49 U.S.C. § 114(r), requires the TSA to prescribe regulations prohibiting disclosure of sensitive information related to transportation security. Section 114(r) provides:

> Notwithstanding section 552 of title 5 [FOIA], the Under Secretary [of the TSA] shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would--
> (A) be an unwarranted invasion of personal privacy;
> (B) reveal a trade secret or privileged or confidential commercial or financial information; or
> (C) be detrimental to the security of transportation.

49 U.S.C. § 114(r)(1). Pursuant to Section 114(r), the TSA has promulgated regulations that prohibit the disclosure of certain categories of sensitive security information. See generally 49 C.F.R. pt. 1520. Among the types of information designated as SSI are "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person," 49 C.F.R. § 1520.5(b)(9)(i), and

"[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system," id. § 1520.5(b)(9)(ii).

Courts have unanimously concluded that Section 114(r) qualifies as a withholding statute for purposes of FOIA Exemption 3. See, e.g., Davis v. U.S. Dep't of Homeland Sec., No. 11-CV-203, 2013 WL 3288418, at *11 (E.D.N.Y. June 27, 2013); Skurow v. U.S. Dep't of Homeland Sec., 892 F. Supp. 2d 319, 330 n.7 (D.D.C. 2012); Gordon v. Fed. Bureau of Investigation, 390 F. Supp. 2d 897, 900 (N.D. Cal. 2004).

Courts have further found that district courts have no authority to review the actual substance of SSI designations, as the jurisdiction to do so lies exclusively within the Court of Appeals. See 49 U.S.C. § 46110(a) (a person challenging the designation of information as SSI "may apply for review of the order by filing a petition in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business"); Skurow, 892 F. Supp. 2d at 331 (concluding that the district court "lack[ed] jurisdiction to review the substance of the TSA's SSI designations"); In re September 11 Litig., 236 F.R.D. 164, 174–75 (S.D.N.Y. 2006) ("District Courts are without jurisdiction to entertain challenges to TSA's determinations."); Chowdhury v. Nw. Airlines Corp., 226 F.R.D. 608, 614 (N.D. Cal. 2004) ("Congress has expressly provided that an appeal from an order of the TSA pursuant to section 114(s) lies exclusively with the Court of Appeals."); Shqeirat v. U.S. Airways Grp., Inc., No. 07-1513, 2008 WL 4232018, at *2 (D. Minn. Sep. 9, 2008) ("District Courts are without jurisdiction to entertain challenges to the TSA's decisions regarding disclosure of SSI.").

For these reasons, where information is withheld as SSI pursuant to Section 114(r) and Exemption 3, the only task for the district court is "to determine whether the material withheld, as described by TSA, fits within the scope of Section 114(r)." Skurow, 892 F. Supp. 2d at 331 (citing Morley v. Cent. Intelligence Agency, 508 F.3d 1108, 1126 (D.C. Cir. 2007)).

Here, the TSA's declarations indicate that SSI was withheld from the incident reports under Section 114(r) and Exemption 3 because the SSI reveals criteria used for enhanced passenger-screening and describes the enhanced screening procedures employed by the TSA. The TSA indicates that if that information were made public, it would "provid[e] insight to those interested in circumventing TSA's checkpoint screening procedures." (Hoffman Decl., D.E. 89-3 ¶ 11.) The Court finds that the material withheld, as described by the TSA, falls within the scope of Section 114(r), as its disclosure would be "detrimental to the security of transportation." 49 U.S.C. § 114(r)(1)(C). Based on that limited scope of review, the Court finds that the TSA's SSI redactions were not improper. The Court therefore grants summary judgment for the TSA and denies Plaintiff's request for disclosure or review of the TSA's SSI designations.

### b. Exemption 6

The next issue is whether the TSA properly redacted the identifying information of TSA employees and responding law enforcement officers pursuant to FOIA Exemption 6.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6).  The primary purpose of Exemption 6 is to protect individuals from injury and embarrassment which may result from the unnecessary disclosure of personal information.  News-Press, 489 F.3d at 1196.

The term "similar files" has been given a broad construction by courts and is interpreted to mean all information that "applies to a particular individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599–603 (1982); see also Del Rio v. Miami Field Office of Fed. Bureau of Investigations, No. 08-21103-CIV, 2009 WL 2762698, at *4 (S.D. Fla. Aug. 27, 2009).

To determine whether personal information is exempt from disclosure under Exemption 6, a court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny."  Office of the Capital Collateral Counsel, 331 F.3d at 802 (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 175 (1991)).

Courts have found that the privacy interests of "lower-echelon" TSA employees may outweigh the public interest in disclosing their identities, such that the withholding of their names from records is appropriate under Exemption 6.  See, e.g., Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 117–18 (D.D.C. 2005); see also Skurow, 892 F. Supp. 2d at 333.  As the court observed in Electronic Privacy:

> As "advocates for security measures that may be unpopular," DHS and TSA employees are likely to experience annoyance or harassment following the disclosure of their involvement with [a particular passenger prescreening] program. . . . The documents released by the defendants will likely be published on the Internet once released to the plaintiff, and it is likely that readers of the plaintiff's reports, including media reporters as well as private individuals, would seek out the employees mentioned for

13

>further information.  This contact is the very type of privacy invasion that Exemption 6 is designed to prevent.
>
>On the other side of the Exemption 6 balance, the public interest in learning the names of these lower-echelon employees is small.  The plaintiff has not demonstrated that knowledge of the names of the employees involved in [the passenger prescreening program] development will help them to understand how the agency performs its statutory duties.  Names alone will not shed any light on how the agencies worked with the airlines.  Indeed, "information that does not directly reveal the operation or activities of the federal government 'falls outside the ambit of the public interest that the FOIA was enacted to serve.'"
>
>Because the privacy interest of DHS and TSA employees in avoiding the unwanted contact or harassment that would result from the release of their names outweighs the public interest in disclosure, the court concludes that the defendants properly invoked Exemption 6 to redact the names of the federal employees included in the documents at issue.

384 F. Supp. 2d at 117–18 (footnotes and citations omitted); see also Voinche v. Fed. Bureau of Investigation, 940 F. Supp. 323, 330 (D.D.C. 1996) (finding "no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities" of FBI special agents and support personnel).  But see Gordon, 390 F. Supp. 2d at 901–02 (finding names of TSA officials improperly withheld under Exemption 6).

Consistent with Electronic Privacy and the TSA's determinations in this case, the Court finds that the TSA justifiably redacted pursuant to Exemption 6 the names and faces of TSA employees and responding law enforcement officers involved in the security confrontation.  The Court agrees that the employees and officers have a privacy interest in their personal identifying information, in particular because disclosure of that information could subject them to unnecessary harassment or stigmatization in connection with this matter.  The Court further finds that there is no public interest in

disclosure, as none of the individuals' names or personal information would shed light on how TSA performs its statutory duties, and the Court has previously found no actionable civil claims arising from the subject security incident.  The Court therefore finds that the privacy interests at stake outweigh any alleged public interest in disclosure under Exemption 6.  On this basis the Court grants summary judgment for the TSA and denies Plaintiff's request for disclosure of the redacted names and faces of the TSA employees and responding police officers.

### c. Exemption 7(C)

The next issue is whether the TSA properly redacted the names of responding police officers pursuant to FOIA Exemption 7(C).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the production of such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Records are "compiled for law enforcement purposes" if they focus on alleged acts that could result in civil or criminal sanctions, Cappabianca v. Comm'r, U.S. Customs Serv., 847 F. Supp. 1558, 1565 (M.D. Fla. 1994), administrative or regulatory proceedings, Rosenglick v. Internal Revenue Serv., No. 97-747-CIV-ORL-18A, 1998 WL 773629, at *2 (M.D. Fla. Mar. 10, 1998), or national security and homeland security-related government investigation, see Gordon v. Fed. Bureau of Investigation, 388 F. Supp. 2d 1028, 1036 (N.D. Cal. 2005).

Exemption 7(C) provides more privacy protection than Exemption 6. Bonilla v. U.S. Dep't of Justice, No. 11–20450-Civ, 2012 WL 3759024, at *3 (S.D. Fla. Aug. 29, 2012). Exemption 7(C) prohibits any disclosure that "could reasonably be expected to constitute an unwarranted invasion of privacy," while Exemption 6 prevents any disclosure that "would constitute a clearly unwarranted invasion of privacy." See Office of the Capital Collateral Counsel, 331 F.3d at 803 n.6.

Here, it is unnecessary to determine whether the law enforcement officers' names were properly redacted under Exemption 7(C), as the Court has found that the names were properly redacted under the narrower Exemption 6. Nonetheless, the Court finds in the alternative that the names were properly withheld pursuant to Exemption 7(C). The Court finds that the subject incident reports fall within the scope of the Exemption, and for the same reasons stated supra, the Court finds that disclosure of the officers' personal information could reasonably be expected to constitute an unwarranted invasion of privacy and would serve no public interest. On this alternate basis the Court grants summary judgment for the TSA and denies Plaintiff's request for disclosure of the redacted names of the responding law enforcement officers.

### d. Alleged Additional Records

Plaintiff next claims that Defendants have failed to produce additional interagency communications responsive to his records request.

"The adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard." Lee v. U.S. Attorney for S. Dist. of Fla., 289 F. App'x 377, 380 (11th Cir. 2008) (quoting Ray v. U.S. Dep't of Justice, 908 F.2d 1549,

1558 (11th Cir. 1990)).  The search need not be exhaustive.  Id.  Rather, "the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents."  Id. (quoting Ray, 908 F.2d at 1558).  This burden can be met by producing affidavits that are "relatively detailed, nonconclusory, and submitted in good faith."  Id. (quoting Ray, 908 F.2d at 1558).

Once the agency meets its burden to show that its search was reasonable, the burden shifts to the requester "to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith."  Id. (quoting Ray, 908 F.2d at 1558).  The failure of an agency to turn up one specific document in its search does not alone render a search inadequate.  Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).

Here, the TSA's unrefuted declarations indicate that a reasonable search was conducted for responsive records both at FLL and within the TSA offices.  Plaintiff has offered no evidence showing that the search was unreasonable or that the TSA acted in bad faith.  Plaintiff's allegations that more records responsive to his request exist is unsubstantiated and, at any rate, insufficient to rebut the presumption of the search's adequacy.  On this basis the Court grants summary judgment for the TSA and denies Plaintiff's request for disclosure of alleged additional records.

### e. FPRA Claim Against Broward

Finally, Plaintiff maintains that Broward violated the FPRA by falsely denying the existence of surveillance footage from the security checkpoint.

Like FOIA, the FPRA provides that Florida citizens have a broad right to inspect the records of public bodies absent a clear and specific exemption from disclosure. See Fla. Stat. § 119.07; Greater Orlando Aviation Auth. v. Nejame, Lafay, Jancha, Vara, Barker, 4 So. 3d 41, 43 (Fla. Dist. Ct. App. 2009).

TSA regulations, meanwhile, provide that airport operators must "(1) Restrict the distribution, disclosure, and availability of sensitive security information (SSI), as defined in part 1520 of this chapter, to persons with a need to know; and (2) Refer all requests for SSI by other persons to TSA."  49 CFR § 1542.101(c); see also id. § 1520.9(a)(3) (providing that airport operators must "[r]efer requests by other persons for SSI to TSA").

Here, Broward acted pursuant to federal regulations and the OTA when it consulted the TSA regarding Plaintiff's records request, and it acted at the direction of the TSA in denying the existence of surveillance footage.  The Court therefore has difficulty in concluding that Broward's actions could be unlawful under the FPRA. Cf. English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990) ("[S]tate law is pre-empted to the extent that it actually conflicts with federal law."); La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n, 476 U.S. 355, 369 (1986) ("[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.").  At any rate, assuming without finding that Broward did not comply with the FPRA when denying the existence of the requested footage, the Court finds that Plaintiff's FPRA claim—which seeks only injunctive relief "requiring the production of all documents requested" (First Amended Complaint, D.E. 20 at 15)—is now moot, as the TSA has

produced the requested footage subject to appropriate redactions. On this basis the Court grants summary judgment in favor of Broward.

## V. Conclusion

It is accordingly **ORDERED AND ADJUDGED** that:

1. Defendant Transportation Security Administration's Motion for Summary Judgment (D.E. 89, 2/13/13) is **GRANTED**;

2. Defendant Broward County's Motion for Summary Judgment (D.E. 93, 2/29/13) is **GRANTED**;

3. Plaintiff Jonathan Corbett's Cross-Motion for Summary Judgment (D.E. 95, 2/27/13) is **DENIED**; and

4. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of September, 2013.

*/s/ Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**